IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ST. MICHAEL'S MEDICAL CENTER, <u>et al</u>., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil No. 07- 1484 (EGS) |
| | ) | **ECF** |
| MICHAEL LEAVITT, Secretary of the Department of Health and Human Services | ) | |
| | ) | |
| Defendant | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>PLANTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to federal Rule of Civil procedure 56, Local Rule 56.1 and this Court's December 13, 2007 Scheduling Order, all Plaintiffs in this action by and through their attorney, respectfully move for an Order granting summary judgment in their favor on the grounds that no genuine issue of material fact exists and that the Plaintiffs are entitled to summary judgment as a matter of law.  This motion is filed on or before April 4, 2008 and is therefore timely.  The Plaintiffs' further assert that on January 4, 2008, at the parties' request, this Court issued an Order consolidating this case with *St. Michael's Medical Center, et al. v. Leavitt*, Civil No. 07-2036 (EGS) which involves the same issue for Federal Fiscal Year (FFY) 2000.  As such, this Motion for Summary Judgment is for both cases covering FFY 2000 and FFY 2001, and the Plaintiffs' respectfully request that

the Court enter an Order declaring that the Defendant's determination of the wage index for the aforementioned FFYs is contrary to law and invalid, and is also arbitrary and capricious. Plaintiffs' further state the following:

1.      Rule 56(a), Federal Rules of Civil Procedure, provides:

> "A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."

2.      Rule 56(c), Federal Rules of Civil Procedure, provides further:

> "…The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law…"

3.      There is no genuine issue as to any material fact in these cases, and the moving party Plaintiffs are entitled to judgment as a matter of law.

4.      Plaintiffs' claims and request for relief should be granted in accordance with Federal Rules of Civil Procedure Rule 56.

5.      In support of Plaintiffs' Motion, we respectfully file a Statement of Material Facts as to Which There is No Genuine Issue pursuant to Local Rules 7(h) and 56.1, a Memorandum of Points and Authorities pursuant to Local Rule 7(a), (both of which are incorporated by reference into this Motion) and a Proposed Order pursuant to Local Rule 7(c).

6.      Plaintiffs further request that the Court's Order have a provision that all payments from the Secretary be placed in the attorney trust account of undersigned counsel for disbursement to the Plaintiffs. The reason for this request is that two of the

Plaintiffs (Barnert Hospital and Passaic Beth Israel Hospital) are in bankruptcy and bankruptcy counsel have indicated that the hospitals have either been sold, or shortly will be, and that the "winding-up" accounts are closing shortly. All Plaintiffs have signed off on this request.

7.     In accordance with Local Rule 7(f), Plaintiffs' respectfully request oral argument on its Motion for Summary Judgment.

WHEREFORE, FOR AND IN CONSIDERATION of the premises stated herein, Plaintiffs respectfully pray for an Order for Summary Judgment in their favor against the Defendant.

Respectfully Submitted,

Counsel for Plaintiffs

/s/ Katherine Karker-Jennings
Katherine Karker-Jennings
Katherine Karker-Jennings, P.A.
D.C. Bar No. 349290
6030 Daybreak Circle
Suite A-150, Room 239
Clarksville, MD 21029
(410) 531-2622
(410) 531-9449 (fax)
Karkerjen@aol.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | |
| ) | |
| ST. MICHAEL'S MEDICAL | |
| CENTER, <u>et al</u>., ) | |
| ) | |
| Plaintiffs ) | |
| ) | Civil Action No. 07-1484 (EGS) |
| v. ) | |
| ) | **ECF** |
| MICHAEL LEAVITT, Secretary of the | |
| Department of Health and Human Services ) | |
| ) | |
| Defendant ) | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## <u>PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE</u>

Pursuant to Local Rules 7(h) and 56.1, Plaintiffs, in support of their Motion for Summary Judgment under Federal Rule 56, respectfully state that the following facts are undisputed:

1.     Plaintiffs, St. Michael's Medical Center, et al. ("Plaintiffs" or "Providers" of Medicare services) brought this action against Michael Leavitt, Secretary of the Department of Health and Human Services (the "Secretary") pursuant to an expedited judicial review determination by the Department's Provider Reimbursement Review Board ("PRRB" or "Board").  [Administrative Record for Civil No. 07-1484 at pages 1-4; and for Civil No. 07-2036 at pages 1-4.]  The Providers are asking the Court to decide

questions of law that the Board found that it did not have the authority to decide, and to determine thereby the merits of their claims for additional Medicare payments.

2.      The Plaintiffs consist of twenty-two urban hospitals from multiple urban Metropolitan Statistical Areas (as defined by the Executive Office of Management and Budget), and the Defendant Michael Leavitt is the Secretary of the Department of Health and Human Services, which is responsible for administering the Medicare program. [Exhibit A of Complaint at Civil No. 07-1484; and Exhibit A of Complaint at Civil No. 07-2036.]

3.      This is an action seeking additional payments from the Medicare program under its prospective payment system on the calculation of the wage index for the Providers for federal fiscal year (FFY) 2001 (October 1, 2000 – September 30, 2001) which includes Provider fiscal years ending September 30, 2001 and December 31, 2001 for Civil No. 07-1484, and for FFY 2000 (October 1, 1999 – September 30, 2000) which includes Provider fiscal years ending September 30, 2000 and December 31, 2000 for Civil No. 07-2036. Specifically, the sole issue before this Court, as noted by the Plaintiffs and the Defendant in their respective Position Papers, is the legal question of whether it was proper for the Centers for Medicare & Medicaid Services to exclude the wage, fringe benefit, and hour data of reclassified hospitals located in the Providers' Metropolitan Statistical Area for purposes of calculating the Providers' federal fiscal year 2001 and 2000 wage index and Geographic Adjustment Factor. [Administrative Record for Civil No. 07-1484 at pages 17 and 425; and for Civil No. 07-2036 at pages 473 and 502.]

4.     Defendant Secretary administers the Medicare program (42 U.S.C. § 1395 et seq., title XVIII of the Social Security Act) through the Department's Centers for Medicare & Medicaid Services ("CMS").  CMS in turn contracts most of the administrative functions of the program to private companies, usually insurance companies, called fiscal "Intermediaries."  The lead (majority) Intermediary in this case is Riverbend Government Benefits Administrator, and the minority Intermediary is Empire Medicare Services (a Division of Empire HealthChoice Assurances, Inc.), collectively the "Intermediaries". [Exhibit A of Complaint at Civil No. 07-1484; and Exhibit A of Complaint at Civil No. 07-2036.]


5.     Payments to acute care facilities under the Medicare program's prospective payment system ("PPS") depend, in part, on a wage index.  The Secretary must adjust the standardized amounts for area wages based on the geographic location of the hospital compared to the national average hospital wage level.  The wage index is calculated by dividing the average hourly wage paid by hospitals in that area by the national average hourly hospital wage.  The Geographic Adjustment Factor ("GAF") (another component of the overall calculation) is computed from the wage index.  Under this formula, the higher the wage index and GAF, the more reimbursement the hospital will receive. *Chicago 98-00 MSA Wage Index group Appeal v. Mutual of Omaha Company*, PRRB Hearing Dec. No. 2006-D7, Dec. 15, 2005, Medicare and Medicaid Guide (CCH) ¶81,455 [Administrative Record for Civil No. 07-1484 at pages 36-43, 37; and for Civil No. 07-2036 at pages 524-531, 525.]

6.     Federal law defines how the area wage levels are to be adjusted.  At all times relevant to this dispute, and even continuing through the filing of these Complaints, the

Medicare statute at 42 U.S.C. § 1395ww(d)(3)(E)(i) has read: "The Secretary shall adjust the proportion (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs, of the DRG prospective payment rates computed under subparagraph (D) for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level." [Administrative Record for Civil No. 07-2036 at page 482.] The Secretary has determined by regulation that the "geographic area" of any urban hospital for this purpose is its Metropolitan Statistical Area ("MSA").   42 C.F.R. § 1004.1, 42 C.F.R. §§ 412.62(f).

7.     Wage levels are regularly adjusted, and CMS is required to update the wage index annually.  CMS bases the annual update on a survey of wages and wage related costs taken from the cost reports filed by each hospital paid under PPS.  42 U.S.C. § 1395ww(d)(3)(E).  At the end of its fiscal year, a hospital submits to its intermediary a cost report setting forth all costs for which it claims reimbursement  42 C.F.R. § 405.1801(b)(1).  Based on these costs and the hospital's wage index, the fiscal intermediary calculates the amount of reimbursement due to the hospital. *Id.* at *Chicago 98-00 MSA Wage Index Group*, [Administrative Record at page 37 for Civil No. 07-1484; and page 525 for Civil No. 07-2036.]

8.     Based on the substantial amount of time that is needed for the hospital to compile and submit cost reports and for the intermediary to review these reports, there is usually a four-year lag between the data collection period and the period to which it is applied.  *Id.*

[Administrative Record at page 37 for Civil No. 07-1484, and page 525 for Civil No. 07-2036.] Thus, for example, the Secretary obtained and reviewed, through his intermediaries, (i) data from FFY1997 for use in the computation of wage indices for FFY 2001, and (ii) data from FFY 1996 for use in the computation of wage indices for FFY 2000.

9.      Although wage indices and GAFs are generally set geographically within the MSAs, Congress determined that this system occasionally produced inequitable results. It therefore in 1989 it created the Medicare Geographic Classification Review Board ("MGCRB"), which reviews applications from hospitals seeking geographic redesignation to a nearby area in order to use that area's higher wage index and GAF.  42 U.S.C. § 1395ww(d)(10); 42 C.F.R. §§ 412.230-412.235.  Reclassifications are temporary, and hospitals that qualify must apply every three years.  42 U.S.C. § 1395ww(d)(10)(D)(v).  *Palisades General Hospital v. Leavitt,* U.S. Court of Appeals for the District of Columbia Circuit, Oct. 14, 2005, [Administrative Record for Civil No. 07-1484 at pages 45-48, 46; and for Civil No. 07-2036 at pages 533-536, 534.]

10.     In the case of rural hospitals redesignated to another area, the wage index of the rural area where the redesignated hospitals are geographically located is calculated by including the wage data of the redesignated hospitals, unless doing so would result in a lower wage index.  42 U.S.C. § 1395(d)(8)(C).  The same was not true for urban hospitals; the data from redesignated hospitals was not included in the wage index calculation for the hospitals left behind in the MSAs for FFYs 2001 and 2000.  The Secretary, without any additions, subtractions, or modifications to the applicable law,

changed this in FFY 2002 (and evermore) for urban hospitals and included the wage data of the redesignated hospitals when calculating the wage index. [Administrative Record for Civil No. 07-1484 at page 431; and for Civil No. 07-2036 at page 498.] The Plaintiffs are seeking to have this change applied for FFYs 2001 and 2000 through these two civil actions.

11.    The Plaintiffs and the Defendant both agree that these two consolidated civil actions are amenable for resolution on cross-motions for summary judgment as evidenced by the March 3, 2008 Joint Status Report.

Respectfully Submitted,

Counsel for Plaintiffs

/s/ Katherine Karker-Jennings
Katherine Karker-Jennings
Katherine Karker-Jennings, P.A.
D.C. Bar No. 349290
6030 Daybreak Circle
Suite A-150, Room 239
Clarksville, MD 21029
(410) 531-2622
(410) 531-9449 (fax)
karkerjen@aol.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ST. MICHAEL'S MEDICAL CENTER, <u>et al</u>., | ) ) ) | |
| Plaintiffs | ) | |
| | ) | Civil Action No. 07-1484 (EGS) |
| v. | ) | **ECF** |
| MICHAEL LEAVITT, Secretary of the Department of Health and Human Services | ) | |
| Defendant | ) | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiffs, St. Michael's Medical Center, et al., hereby submit this Memorandum in Support of their Rule 56 Motion for Summary Judgment and respectfully state the following:

**I**

**Plaintiffs are Entitled to Summary Judgment Under F.R.C.P. 56**

As noted in the Plaintiffs' Motion for Summary Judgment, under Federal Rule 56 Summary Judgment is appropriate where the pleadings, interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c).  The **Statement of Material Facts As To Which There is No Genuine**

**Issue** is incorporated herein by reference in its entirety as if fully restated, and, based on the undisputed facts Plaintiffs ate entitled to judgment as a matter of law.

## II

### Summary of Dispute and Proposed Remedy

Despite the acknowledged complexities of the Medicare program, this is a simple, clear-cut case. The Plaintiffs (also known as "Providers") are all prospective payment System ("PPS") urban hospitals who have been financially materially harmed by the fact that the Secretary of the Department of Health and Human Services (the "Secretary") excluded the wages of all reclassified hospitals located in the Providers' various Metropolitan Statistical Areas ("MSAs") (in violation of federal law as argued below) for purposes of calculating the Providers' FFY 2001 and 2000 wage index and Geographic Adjustment Factor ("GAF"). By definition, hospitals who successfully reclassify to another MSA increase their reimbursement; the criteria for redesignation only allow hospitals to move into MSA's with higher wage indices and GAFs. Typically, hospitals with higher average hourly rates redesignate to MSAs with higher wage indices and GAFs. Put another way, it is the higher paying hospitals which seek reclassification, and, under the Secretary's policy in the years at issue to exclude the reclassified hospitals from the calculation of the wage index in the (departed) MSA, this leaves the remainder of the hospitals in that MSA with less reimbursement. This policy is in direct violation of Congress' clearly stated intent, and, in fact, said policy is so flawed that the Secretary corrected the injustice in the year 2002 (discussed below), thereby providing the strongest proof possible that the Plaintiffs' demand for restitution for the years 2001 and 2000 is the only legitimate outcome.

Also, critical to note here and as further outlined below, the Secretary corrected the injustice through comments made in a preamble of a Final Rule; no legislative or regulatory change was necessary. In other words, the change occurred without any Congressional involvement and with no new regulations. That is because no change in the law was necessary as the law already clearly mandated what was effectuated in the year 2002. Therefore, the Plaintiffs are challenging the wage index and GAF established by the Secretary in the years 2001 and 2000, alleging that the policy in place at that time is inconsistent with the applicable Medicare statute, that it is arbitrary and capricious and a violation of the Administrative Procedure Act and the Equal Protection Clause, and that it is otherwise contrary to the law.

The Plaintiffs further contend that the solution to this injustice is to implement the "fix" that the Secretary himself implemented in the year 2002. Simply put, the Plaintiffs should receive a wage index and GAF based on a labor market which includes all urban hospitals located in their respective MSAs during the year from which wage index data was drawn (1997 for FFY 2001 and 1996 for FFY 2000), that is, include all reclassified urban hospitals in the computation. The impact of this correction is enormous for the affected hospitals because this would require the inclusion of the wages of the 'high cost hospitals' that staged a successful Medicare Geographic Classification Review Board ("MGCRB") appeal to move to another (more lucrative) MSA. A complete listing of each hospital in these civil actions, along with the effect of the improper CMS wage index computation is in the record at Exhibit A of the Complaint for Civil No. 07-1484 and Exhibit A of the Complaint for Civil No. 07-2036. These two Exhibits show a collective underpayment of approximately $23,956,069 for the 2001 cost reporting year

and a collective underpayment of approximately $20,588,699 for the 2000 cost reporting year.

## III

### Law and Arguments

1.  **In the years 2001 and 2000, Federal law already mandated that all of the PPS hospitals in the Providers' respective MSAs should have been included in the computation of the wage index and GAF for those MSAs including those high cost PPS hospitals which had successfully reclassified to a new, 'richer,' MSA.**

Plaintiffs' assert that the Secretary exceeded his statutory authority and his actions must be set aside pursuant to the Federal Administrative Procedure Act at 5 U.S.C. § 706(2)(C) which reads in part: "….The reviewing court shall – hold unlawful and set aside agency action, findings, and conclusions found to be – in excess of statutory jurisdiction, authority, or limitations, or short of statutory right…"  In other words, if a statute is clear on its face it must be faithfully enforced.

Federal law clearly defines how the area wage levels are to be adjusted.  At all times relevant to this dispute, and even continuing through the filing of these Complaints, the Medicare statute at 42 U.S.C. § 1395ww(d)(3)(E)(i) has read: "**The Secretary shall adjust the proportion** (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs, of the DRG prospective payment rates computed under subparagraph (D) for area differences in hospital wage levels by a factor (established by the Secretary) **reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level**."  (Emphasis added.)  The law does not say that the Secretary "may" adjust the proportions; nor does it say that the hospital specific portion should be measured by the "relative hospital wage level in the geographic area of the hospital *minus*

*the wage levels of any hospitals which have waged successful reclassification appeals through the MGCRB*." The federal law, (which these Providers are seeking to enforce) is clear, and the Secretary's policy in the years at issue plainly violates this law. The Secretary's own subsequent actions support this fact; as further discussed below, the Secretary changed his policy in FFY 2002 and granted the remedy sought herein. This was done with no change in the law, and the Plaintiffs are seeking the same remedy and correction of the wage index calculation for FFYs 2001 and 2000 as they suffered material damages in those years under an illegal policy, and it is the only logical remedy. The Plaintiffs' want to make it perfectly clear that they are not challenging a law or regulation, but rather are seeking to enforce a law, namely 42 U.S.C. § 1395ww(d)(3)(E)(i), which the Secretary did of his own accord in FFY 2002. By the same token, just because the Secretary's illegal policy did not arise from a change in regulation but rather passively following the creation of the MGCRB, does not in any way diminish the violation of the clear language of the above-referenced statute.

Lawsuits involving plaintiffs asking for enforcement of a clear and unambiguous statute are not new and, in fact, have evolved and expanded over time. It is also not uncommon to find that the only real remedy is a retroactive adjustment. This was the situation in *Georgetown University Hospital, et al. v. Otis R. Bowen, Secretary of Health and Human Services*, U.S. Court of Appeals for the District of Columbia Circuit, (Nov. 15, 1988), Medicare and Medicaid Guide (CCH) ¶37,515 [Administrative Record for Civil No. 07-1484 at pages 53-59; and for Civil No. 07-2036 at pages 542-548.] Here, several hospitals were seeking retroactive corrections to their base year costs during the phase-in period of the PPS, based on additional costs subsequently allowed for the

hospital-specific portion of the PPS transition rate. The Secretary acknowledged that the additional costs were allowable in the calculation of the hospital-specific rate, but ruled that the corrections would only be applied prospectively and would not be allowed for the earlier phase-in years. The District Court for the District of Columbia (this Court) held for the hospitals and the Court of Appeals affirmed, stating that the Secretary's decision to apply the corrections only prospectively "was not in accordance with the Medicare statute" which "directs the Secretary to calculate the hospital-specific portion of reimbursement rates on the basis of 'the allowable operating costs on inpatient hospital services…recognized under this title for such hospital for the preceding 12-month cost reporting period…' 42 U.S.C. § 1395ww(b)(3)(A). In the most direct language, therefore, Congress clearly ordered that costs that were 'allowable' under the old system were to remain a component of payment rates during the phase-in period of the new system" and therefore the corrections should be applied retroactively to the earlier phase-in years. CCH ¶37,515 at page 3. The Court emphasized that without a retroactive application of the corrections to the hospital-specific portion of the PPS calculation, the phase-in period would be rather meaningless because "[T]he phase-in created a hybrid of the old and the new." Additionally, the Court noted that "[I]n reviewing an agency's construction of a statute, this court looks first to 'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter' (Quoting) *Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837, 842 (1984)." CCH ¶37,515 at page 3.

This Court is familiar with the two-step process for reviewing an agency's interpretation of a statute under *Chevron.* If Congress "has directly spoken to the precise

question at issue," then the Court "must give effect to [its] unambiguously expressed intent" and "that is the end of the matter." *Chevron*, 467 U.S. at 842-43 & n.9. Only if the Court finds that Congress did not speak to the issue directly, or that the statute is ambiguous on the question presented, does the Court provide any deference to the agency's interpretation of the statute. Even then, in the second step of the *Chevron* analysis, it gives deference to the agency only if the agency's interpretation is a reasonable and permissible construction of the statute. *Chevron*, 467 U.S. at 843-45.

The Secretary's action in these consolidated civil actions does not survive the first step of the *Chevron* inquiry, as the governing statue is clear and unambiguous, and the Plaintiffs will be materially harmed if the statute's terms are not enforced for FFYs 2001 and 2000. Additionally, like the *Georgetown University Hospital* case which involved limited phase-in years, the remedy sought by these Plaintiffs is time limited to only the years at issue. These consolidated lawsuits for FFYs 2001 and 2000 are the last of its kind, as the misinterpretation of the law was corrected in FFY 2002. There will be no further lawsuits by the Plaintiffs for any other years.

It can not be said enough that the controlling federal law in these cases clearly defines how the area wage levels are to be adjusted. Just as the Court in the *Georgetown University Hospital* case found that the statutory language of "allowable operating costs of inpatient hospital services" [42.U.S.C. § 1395ww(b)(3)(A)] was clear on its face in defining how to calculate the hospital-specific portion of the PPS transition rate, so too is the language at 42 U.S.C. § 1395ww(d)(3)(E)(i) clear in its directive to the Secretary on how to annually update the wage index. The law unambiguously states that the Secretary is to compare the national average hospital wage level with a local analysis of a hospital's

wage data information.  (Another ""hybrid" situation like the PPS phase-in years at issue in the *Georgetown University Hospital* case.  And just like in the *Georgetown* case, the only logical remedy is to retroactively correct the collection of the local wage data so that the "hybrid" [the local and national comparisons] mathematically reflects what Congress mandated.)   This local calculation must "reflec[t] the relative hospital wage level **in the geographic area of the hospital**."   In the years at issue, the Secretary excluded all redesignated hospitals from the Providers' respective MSAs (by definition "in the geographic area" of the Providers as further discussed below) in direct violation of a clear reading of the statute.  While this violation of the law was corrected in FFY 2002 (and evermore) the harm in FFY 2001 and FFY 2000 remains, and the only logical or real remedy is to award the Plaintiffs the proper wage index and GAF based on a labor market which includes all urban hospitals located in their respective MSAs during the year from which the wage index was drawn, which would include all reclassified hospitals. This is mandated by a clear statute, and "[I]f the intent of Congress is clear, that is the end of the matter".  *Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.* 467 U.S. 837, 842 (1984).

Another case which involved a retroactive adjustment to the PPS calculation due to a clear but misinterpreted statute can be found at *St. Bernard's Hospital, Inc. v. Thompson*, 193 F.Supp.2d 1097 (E.D. Ark. 2002).  There the Court awarded the plaintiffs retroactive reimbursement for the years that they were unlawfully denied rural referral center (RRC) status by the Secretary.  That status was crucial for the plaintiffs in their efforts to wage a successful appeal before the MGCRB. The Court found that the Secretary inappropriately applied its interpretation of §4202(b) of the 1997 Balanced

7

Budget Act (and put that misinterpretation in a Final Rule) by requiring that, for a hospital to be reinstated to RRC status, it must be a rural hospital. In granting the plaintiffs' Motion for Summary Judgment, the Court struck down the Final Rule stating that "the Final Rule (requiring rural hospital status) is contrary to the plain language of the statute."

As further proof that the language of 42 U.S.C. § 1395ww(d)(3)(E)(i) is clear on its face and must be enforced for FFYs 2001 and 2000, the Plaintiffs direct the Court to two cases which directly addressed the language of the statute. First, in *Bellevue Hospital Center, et al. v. Leavitt*, 443 F.3d 163 (2d Cir. 2006), seventy-six hospitals, unhappy with the recent shifting of MSA boundaries by the Office of Management and Budget which would affect their wage index calculation for FFY 2004, challenged the use of MSAs in defining "geographic area(s)" in 42 U.S.C. § 1395ww(d)(3)(E)(i). The hospitals were also challenging the Secretary's decision to apply the occupational mix adjustment to only ten percent of the wage index. The appellate Court upheld the lower Court's ruling that (i) the Secretary's use of MSAs to define "geographic areas" under the statute was reasonable and not arbitrary or capricious, **but** (ii) the Secretary's actions **were** arbitrary and capricious when he applied the occupational mix adjustment to only ten percent of the wage index.

This case is important for two reasons; it upheld the Secretary's policy in using MSAs to define "geographic area" and struck down as arbitrary and capricious the Secretary's decision to limit the application of the occupational mix adjustment. As to this latter point, and to highlight the Secretary's lack of discretion under the clear

meaning of 42 U.S.C. § 1395ww(d)(3)(E)(i) in calculating the area wage index, the Court stated:

> CMS's [the Secretary's] task is unambiguous: to calculate a factor that reflects geographic-area wage-level differences, and nothing else. We reject defendant's contention that this provision, or any other in the Medicare Act, confers upon him the discretion to take into account all sorts of unrelated policy considerations, such as whether certain hospitals receive unwarranted advantages from other provisions of the Medicare reimbursement scheme. *Id.* at 174-75.

If the Secretary's task for calculating the wage index was "unambiguous" for the Court in *Bellevue Hospital Center* then it is also unambiguous in the FFYs of 2000 and 2001, as the statutory language is unchanged. Instead, the Secretary did not do what Congress ordered and, in those two years (until corrected in FFY 2002), constructed an area wage index that did not accurately reflect, and in fact distorted, wage levels in the geographic area of the Providers by excluding the reclassified urban hospitals. This exceeded the authority provided to him by Congress and, for that reason, the Secretary's actions must be set aside under 5 U.S.C. § 706(2)(C).

The second case that upholds the clear meaning of 42 U.S.C. § 1395ww(d)(3)(E)(i) was decided by this Court just five weeks ago. *Anna Jacques Hospital, et al. v. Leavitt*, U.S. District Court for the District of Columbia, Civil Action No. 05-0625 (GK), (Feb. 26, 2008), Medicare and Medicaid Guide, (CCH) ¶302,335. In *Anna Jacques Hospital*, sixty-two Massachusetts hospitals brought an action against the Secretary challenging his new policy of excluding converted critical access hospitals (CAH) from the wage index calculation starting in FFY 2004. The plaintiffs did not challenge the results for Fiscal Year 2004, but they did challenge the calculation of the Fiscal Year 2005 index. The Court wrote that "[T]he applicable statutory provision, 42

9

U.S.C. § 1395ww(d)(3)(E)(i), requires the Secretary to 'adjust the proportion…of hospitals' costs which are attributable to wages and wage related costs…by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.'"

This Court then noted that "[T]he statute requires that the 'factor' shall be updated on the basis of a *survey* conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of subsection (d) hospitals [PPS hospitals] in the United States.'"  CCH ¶302,335, at page 6 (emphasis in original).  The Court found that "…the plain language of the statute indicates that Congress required the Secretary to conduct an accurate survey of the wages and wage related costs of subsection (d) hospitals and to use the resulting data as the 'principal component' or 'basic principle' in adjusting the area wage index. The statute does not give the Secretary discretion to exclude from the survey an entire category of institutions that were subsection (d) hospitals at the time of the survey, nor to choose to exclude those same hospitals when updating the area wage index on the basis of the survey because the Secretary felt those hospitals have 'substantially different labor costs in many labor market areas where they exist.' [*Citing*] 68 Fed. Reg. 45,346, 45,397 (Aug. 1, 2003)]" CCH  ¶302,335, at page 7.  Based on this analysis the Court held[1] that the Secretary exceeded his statutory authority in violation of 5 U.S.C. § 706(2)(C) and the holding of the Supreme Court under  *Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837 (1984).

---

[1] Even though the Court held that the Secretary exceeded his statutory authority, the Court also addressed the argument that the Secretary's actions were arbitrary and capricious.  That will be discussed in the third argument herein.

The Court, in reaching its decision, also analyzed the legislative history of the statute under scrutiny.    Such a review shows the progression of Congress' reining in of the Secretary's discretion under the statute.    Congress began by establishing the creation of a wage index in 1983 when the PPS was first established.    At that time, Congress required that:

> The Secretary shall adjust the proportion, (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs, of the DRG prospective payment rates … for area differences in hospital wage levels by a factor (established by the Secretary) **reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.**

Social Security Amendments of 1983, Pub. L. No. 98-21, § 601 (1983), 97 Stat. 65, 167 (codified at 42 U.S.C. § 1395ww(d)(3)(E) (emphasis added)).

The Court of appeals for the District of Columbia reviewed this early version of the statute and found that it did "not specify how the Secretary should construct the index, nor how often she must revise it."  *Methodist Hospital v. Shalala*, 38 F.3d 1225, 1229 (D.C. Cir. 1994).  This holding delegated the construction to the Secretary.

In 1987, this materially changed when Congress amended the statute and explicitly limited the Secretary's discretion by ordering the Secretary to use a survey of the wages paid by subsection (d) hospitals [PPS hospitals] to update the wage index factor.  The statute was amended[2] to read:

> The Secretary shall update the factor under the preceding sentence on the basis of **a survey** conducted by the Secretary (and updated as appropriate) **of the wages and wage-related costs of subsection (d) hospitals of the United States.**

---

[2] Congress amended the statute again in 1989 and required the Secretary to update the wage index every twelve months instead of thirty-six.  Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, §6003, 103 Stat. 2106.

Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, § 4004, 101 Stat. 1330 (amending 42 U.S.C. § 1395ww(d)(3)(E)) (emphasis added).

The Court then concluded, "[T]his legislative history lends additional support for the conclusion that Congress intended to curtail the Secretary's previously existing discretion and mandate the particular mechanism by which the Secretary would adjust the area wage index – through a survey of wage-related costs of subsection (d) hospitals." CCH ¶302,335 at page 7.

Just as this Court ruled in *Anna Jacques Hospital* that the Secretary violated Congress' clear command that he conduct an accurate survey of wages of subsection (d) hospitals and may not cherry-pick which hospitals to include, so must this Court conclude that the Secretary may not exclude reclassified hospitals from the wage index calculation when the statute clearly states that the calculation must reflect "the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level." 42 U.S.C. § 1395ww(d)(3)(E)(i).   The exclusion of the reclassified hospitals from the wage index calculation is the same as the exclusion of the CAHs in the wage index calculation.  This exclusion by the Secretary exceeded the authority provided to him by Congress and, for that reason, the Secretary's actions must be set aside under 5 U.S.C. § 706(2)(C) and under the holding by the Supreme Court in the *Chevron* decision.

Finally, it is important to recall just what is the purpose and intent of the hybrid (the local and national wage comparison) wage index calculation.  As the U.S. Court of appeals for the Third Circuit noted in *Robert Wood Johnson University Hospital v. Thompson*, 297 F.3d 273 ( July 12, 2002), the purpose of  grouping urban hospitals into MSAs is "to provide comparable reimbursement to hospitals that compete for the same

labor pool due to their geographic proximity". It was (and is) the intent of the Secretary to pay hospitals based on the average of the wages paid to peer facilities in the hospital's actual geographic area. This makes sense as all the hospitals in the same geographic area (MSA) are competing for a limited number of skilled workers. By not including the data from the (higher cost) reclassified hospitals, the wage index for the hospitals left behind is significantly decreased, making it difficult for those hospitals to financially compete with the higher paid reclassified hospitals for the same labor pool. In fact, when responding to public comments on the verification of data used to develop the 2003 wage index data, the Secretary went back to a comment it made in 1994 and stated: "**We have always maintained that any hospital that is in operation during the data collection period used to calculate the wage index should be included in the database**, since the hospital's data reflect conditions occurring in that labor market area during the period surveyed." 67 Fed. Reg. 49,982, at 50,023 (August 1, 2002), citing 59 Fed. Reg. 45,330 at 45,353, (September 1, 1994).

**2.    In changing the regulations to achieve in federal fiscal year 2002 the result the Providers desire in federal fiscal years 2001 and 2000, the Secretary has admitted that the previous policy misinterpreted the clear reading of the statute, reached an unfair result, and therefore, violated 42 C.F.R. §413.5(b)(3) which requires that payments to providers be "fair to each provider individually." There is no other conclusion that can be reasonably drawn from this change in policy.**

The Government clearly recognized the error of its ways in excluding the wages of reclassified hospitals located in the Providers' MSA in calculating the Providers' 2001 and 2000 wage indexes because CMS revised its policy, without any change in the applicable laws or regulations, effective in the year 2002 to achieve the very result sought

by these Providers, but only in future cases.  66 Fed. Reg. 39,828 (August 1, 2001).

Effective for PPS payments on and after October 1, 2001, the August 1, 2001 final PPS

rule announced a new policy that where urban hospitals move out of an MSA due to a

successful MGCRB appeal, the wage index for the remaining urban hospitals in the MSA

will be computed by including the wages and hours of the removed hospitals.  In other

words, the Secretary gave urban providers in FFY 2002 what these Providers are seeking

through these lawsuits for fiscal years 2001 and 2000, and had that policy been in effect

for FFYs 2001 and 2000, the Providers would have received the additional monies

currently sought herein.

Also, it is important to note that the Secretary has not defended his position of not

including redesignated hospitals in the urban wage index calculation before the correction

was made in FFY 2002 through litigation or otherwise.  Quite the contrary, the Secretary

has been publicly debating the unfair treatment of urban hospitals and the reclassification

process as far back as 1991.  The preamble of 56 Fed. Reg. 43,195 (August 30, 1991)

which implemented changes to the 1992 PPS inpatient hospital rates contains the

following discussion at page 43,221:

> Comment:  Many commenters expressed concern about the reductions in the
> wage index values for urban areas that lost hospitals as a result of the
> reclassification of some hospitals from those areas.  Some commenters suggested
> that we apply the same protection to urban areas as section 1886(d)(8)(C)(ii) of
> the Act affords to rural areas, that is, to prevent a rural area from having its wage
> index value reduced as a result of geographic reclassifications.

The government's lengthy response first explains the inequitable application of the "hold

harmless" protections that apply to rural but not urban hospitals, and then goes on to state

in part:

In order to provide more than a partial remedy to this situation, we considered using the general exceptions authority under section 1886(d)(5)(I) of the Act to provide the same "hold harmless" protection that the statute affords to rural areas when hospitals are reclassified from those areas.  That is, we considered providing that the wage index value for an urban area could not be reduced due to the reclassification of hospitals from that area.  However, we do not believe this action would be appropriate…..If we were to create a new "hold harmless" rule, ….we would be making a significant change in the scheme constructed by Congress….Furthermore, we are generally reluctant to rely on the exceptions authority for the purpose of rewriting the statute **to supply what may have been left out through oversight or inadvertence**.  Therefore, even though the change may be warranted, we believe that it should be made through legislation. (Emphasis added.)

This record demonstrates that the Secretary through CMS (then HCFA) recognized as far back as 1991 that there was a (inadvertent) violation of the equal protection laws (discussed more below) between urban and rural hospitals which the Secretary felt powerless to correct.  Yet, as mentioned above, the issue is brought up again in the year 2001 **and this time the equal protection issue is corrected by the Secretary without the need for Congressional enactment of new legislation.**  Rather, the Secretary just changed his reading of the underlying statute, without any change in the law.  The fact that the Secretary corrected his reading of the underlying statue in FFY 2002 in no way alleviates him from answering these legal challenges for FFYs 2001 and 2000.

The history of the Secretary's change in policy can be further traced by reviewing the two Federal Register publications which gave rise to the changes.  The Proposed Rule (with comment period) is found at 66 Fed. Reg. 22,646 (May 4, 2001) and the Final Rule is at 66 Fed.Reg. 39,828 (August 1, 2001).  (These two publications are almost mirror images of one another but for ease of citation the Plaintiffs will refer only to the Final Rule.)  Section III of the preamble of the Final Rule is entitled **Changes to the Hospital**

**Wage Index**, and commences with the following sentence: "Section 1886(d)(3)(E) of the Act requires that, as part of the methodology for determining prospective payments to hospitals, the Secretary must adjust the standardized amounts 'for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wages level in the geographic area of the hospital compared to the national average hospital wage level.'" 66 Fed. Reg. at 39,858.

The preamble of 66 Fed. Reg. 39,828 goes on to state at page 39,865:

Currently, the wage index value for an urban area is calculated exclusive of the wage data for hospitals that have been reclassified to another area. **For the FY 2002 wage index, we include the wage data for a reclassified urban hospital in both the area to which it is reclassified and the MSA where the hospital is physically located. We believe this improves consistency and predictability in hospital reclassification and wage indexes, as well as alleviates the fluctuations in the wage indexes due to reclassifications**. For example, hospitals applying to reclassify into another area will know which hospitals' data will be included in calculating the wage index, because even if some hospitals in the area are reclassified, their data will be included in the calculation of the wage index of the area where they are geographically located. **Also, in some cases, excluding the data of hospitals reclassified to another MSA could have a large downward impact on the wage index of the MSA in which the hospital is physically located. The negative impact of removing the data of the reclassified hospitals from the wage index calculation could lead to large wage disparities between the reclassified hospitals and other hospitals in the MSA, as the   remaining hospitals would receive  reduced payments due to a lower wage index….**

This observation is the sole authority for the change in policy.  The underlying federal statute cited above already mandated the new policy, so there was no Congressional change to the law, and the only affected regulations from this rule making are the new regulation of 42 CFR §412.235, and the modified existing regulations found at 42 CFR §§412.256, 412.273, 412.274(b), and 412.276.  None of these regulations discuss the decision to include reclassified urban hospital data in the MSA where the hospital is located.  (The specifics of what these regulations do implement can be found

16

at 66 FR at 39,865 at F1.)  If one were to take a snap shot of the law governing the calculation of the urban wage index in the year 2002 and compare it to the law in 2001 and 2000, it would be identical.

Also, it is important to note that the Secretary extended the hold harmless protection to urban hospitals only to the extent already defined by the existing statute. One Commenter, in responding to the proposed change in the Interim Rule, proposed that the hold harmless provision for urban hospitals be extended to include the full protections given to rural hospitals.  In other words, a reclassified urban hospital's wage data would be included in the area in which it is physically located (the MSA) if it benefits the area; but excluded if it financially harmed the MSA.  The government responded by saying that the additional benefit (excluding the reassigned hospital if its inclusion harmed those hospitals left behind) given to rural hospitals is specified in the law at 42 U.S.C. § 1395ww(d)(8)(C)(iii).  That is not true for urban hospitals, which are broken down into identifiable MSAs, and must rely solely on the language of 42 U.S.C. § 1395ww(d)(3)(E)(i).  The government reasoned:  "We believe that hospitals continue to compete for services with the hospitals that are grouped with them in their respective MSAs.  Therefore, it would be appropriate to **continue** to calculate the wage index for those areas as if those hospitals had not reclassified to another area.  As a result, we intend to implement our policy to hold urban hospitals harmless to the extent that the wages of the hospitals that are physically located within urban areas will **continue** to be used in the compilation of the wage index whether or not these hospitals successfully seek reclassification elsewhere."  (Emphasis added.)  66 Fed. Reg. 39,828, 39,866 (August 1, 2001).  The Plaintiffs find the government's use of the word "continue" as

noted in bold script interesting, as if that had been the case all along.  The Secretary had a wide range of verbs from which to choose, such as "change", "modify", or "clarify" yet chose to say "continue".  One can only conclude, whether referencing an English dictionary or the rules of statutory construction, that the Secretary believed that the statute required this protection all along, or indeed this was meant to be his policy all along, otherwise the Secretary would have used the word "change", "modify" or "clarify."

The Preamble in the Final Rule also noted the opinion of the Medicare Payment Advisory Commission by stating:

> Finally, we note that the Medicare Payment Advisory Commission (MedPAC), in its March 2001 "Report to the Congress: Medicare Payment Policy," recommended this policy…..**To illustrate the potential negative impact on hospitals in an area where reclassifications of some hospitals to another area results in a decline in the wage index after the reclassified hospitals are excluded from the wage index calculation, MedPAC points out that hospitals in several MSAs have organized to pay qualifying hospitals not to reclassify. Our policy change in this final rule removes this distorted incentive**. (Emphasis Added.) 66 Fed. Reg. at 39,865.

The Medicare Payment Advisory Commission had more than that to say in its March 2001 report to Congress.  In advocating for the inclusion of the reclassified urban hospitals in the departed MSA, the Commission stressed the disparate treatment of urban and rural hospitals and accurately noted:

> [T]he average wage of the area in which a reclassified rural hospital is actually located will necessarily go down (since a hospital must have above-average wages to qualify), but rural hospitals have complete protection from this change. Their wage indexes are computed as if no hospitals had been reclassified.  All reclassifications must be implemented on a budget-neutral basis, but the reduction in base payment rate for rural hospitals in 2001 was only 0.5 percent.  Thus, some rural hospitals gain substantially from reclassification and those that are not reclassified are limited to only small losses.

For urban hospitals, the dampening effect of reclassified hospitals on the wage indexes of the areas to which they are reassigned is limited to 1 percent, the same as for rural hospitals.  But non-reclassified urban hospitals do not have the same protection as their rural counterparts.  Their wage indexes are recomputed to exclude the above-average wages of hospitals that have been reclassified out of their area, with the size of the reduction limited only by the constraint that an urban area's wage index cannot be lower than the statewide rural average.  Thus, while some urban hospitals gain significantly from being reclassified, others can lose substantial amounts of payment.  In addition to the drop in their wage index of up to 1 percent from incoming rural reclassifications and a small percent reduction in their base payment rate from the budget neutrality factor, they may face a larger reduction in their wage index from outgoing reclassifications.

Based on this well-reasoned analysis of the fundamental unfairness of the Secretary's policy, the Commission recommended that "**Congress should protect urban hospitals from the adverse effect of nearby hospitals being reclassified to areas with higher wage indexes by computing each area's wage index as if none of the hospitals located in the area had been reassigned**."  (Emphasis in original.)  Of course, Congressional intervention was not necessary as the law already granted the Providers' remedy.

Additionally, under Medicare regulations the payments to providers must be "fair to each provider individually."  Medicare regulation 42 CFR §413.5(b) states, in part,

> (b) Putting these several points together, certain tests have been evolved for the principles of reimbursement and certain goals have been established that they should be designed to accomplish.  In general terms, these are the tests or objectives:
>
> …
>
> > (3) That there be a division of the allowable costs between the beneficiaries of this program and the other patients of the provider that takes account of the actual use of services by the beneficiaries of this program **and that is fair to each provider individually**. (Emphasis added)

Thus, the Medicare program has a requirement, self-imposed by regulation rather than Congressionally imposed by law, that payments to each provider be fair. This means that payments to one provider may not be unfair with the justification that payments overall are fair. The regulation requires that payments to each and every provider be fair.

In this case, no one can argue that it is fair to exclude the data of high cost hospitals that have successfully appealed to the MGCRB and been reclassified to another 'richer' MSA. The government has acknowledged that such an outcome "could have a large downward impact" on the wage index of the MSA in which the remaining hospitals are located, thus distorting the home-based MSA. 66 Fed. Reg. 39,828 (August 1, 2001) at 39,865. That outcome has certainly come true for the Plaintiffs in these lawsuits as Exhibit A to both Complaints demonstrates. To make this situation fair, this Court should order that the wage data for any reclassified hospital remain in the calculation of its MSA wage index and GAF where it is located. Otherwise, the payments to the Providers are not fair, are distorted, and 42 CFR §413.5 has been violated.

A similar situation of wage index distortion arose in *Centra Health, Inc. v. Shalala*, U.S. District Court for the Western District of Virginia, (June 28, 2000) [Administrative Record for Civil No. 07-1484 at pages 68-78; and Civil No. 07-2036 at pages 557-567.] There, three public hospitals in the Lynchburg, Virginia Metropolitan Statistical Area ("Lynchburg MSA") were protesting the Secretary's inclusion of a fourth facility, the Central Virginia Training Center (CVTC), which was not open to the public and, instead, served a statewide population of mentally-disabled individuals, in the Lynchburg MSA. Additionally, the providers argued that the CVTC was essentially a

skilled nursing facility as it had the functional equivalent of 11 PPS-covered hospital beds, which resulted in its nonhospital wages being twenty times its hospital wages, thus distorting the Lynchburg MSA wage index calculation.  The Court agreed with the providers and granted their Motion for Summary Judgment.  Noting that "the Medicare Act does not give unusual deference to the Secretary" the Court found that inclusion of the data of the CVTC would distort the wage index values for the Lynchburg MSA.   The Court wrote: "The implication for the case at hand is clear: the [Social Security] Act requires the Secretary to create an index that accurately represents the relative wage levels of hospitals in a given MSA.  Including in a relatively small MSA the equivalent of 15 to 17 nursing homes, which by statute should be excluded from the wage index, does not advance that goal……While some over-and under-inclusiveness may be acceptable in devising an overall methodology, this situation is one where 'rough justice becomes clear injustice.'  (Quoting) *United States v. Halper*, 490 U.S. 435, 466 (1989)".

That is precisely what the Plaintiff Providers are arguing in this case.  By excluding the data of high cost hospitals that have successfully appealed to the MGCRB, the Secretary is distorting the remaining Providers' respective MSAs, resulting in a "downward impact".  66 Fed. Reg. 39,828.  The only remedy under the reasoning of the *Centra Health* case is to include the reclassified hospitals in the Providers' respective MSAs and correct the distortion caused by the reclassifications.

**3.    It was arbitrary and capricious under the Administrative Procedure Act and a violation of the Equal Protection Clause (i) to enforce a policy that <u>excludes</u> the wage data for hospitals that have been reclassified to another area for FYs 2001 and 2000 and to have another policy that <u>includes</u> these same reclassified hospitals for the computation of the wage indices for FY 2002 (and going forward) to the detriment of the Providers in FYs 2001 and 2000, and (ii) to arbitrarily protect rural hospitals from the effects of successful reclassifications but not extend the same protection to urban hospitals.**

Under the Equal Protection Clause of the United Sates Constitution, persons and institutions must be treated similarly in similar circumstances.  It is unconstitutional to treat one person or group differently from another without sufficient cause.  Also, as the Plaintiffs are challenging a policy of the Secretary in the years at issue, and as noted in the Plaintiffs' first argument, the Court is guided in its review under the Administrative Procedure Act ("APA").  Under the APA's "scope of review" at 5 U.S.C. §706(2)(A), "The reviewing court shall – hold unlawful and set aside agency action, findings, and conclusions found to be – arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law…"  Plaintiffs contend that the intent of Congress in this instance is clear, and the Secretary's interpretation of the law in the years at issue is inconsistent with a clear reading of the statute.

The Plaintiffs further contend that it violates both the APA and the Equal Protection Clause to arbitrarily and capriciously have a policy in place for urban but not rural hospitals in the year 2001 and 2000 that creates a "large downward impact on the wage index" (66 Fed. Reg. at 39,865), and then correct that arbitrary policy for urban hospitals for the year 2002 (and going forward) without making restitution to those who were harmed by the policy in the years 2001 and 2000.  Nothing in the underlying **law** changed between the earlier years at issue and 2002.  The federal law which defines how the Secretary "shall" adjust the wage indices did not change; the law consistently

22

required the wage index adjustments to reflect "the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level". 42 U.S.C. §1395ww(d)(3)(E)(i).  Yet in the years 2001 and 2000, the Secretary applied a (already acknowledged as far back as 1991) flawed policy to treat urban hospitals one way, and rural hospitals another, which had the undisputed effect of financially harming the urban Providers in these lawsuits.  The fact that the government subsequently corrected this policy to conform to the law (without any change in the law) does not erase the fact that these Plaintiffs have real and measurable damages in the years at issue.  This equal protection and APA violation could not be clearer, and must be corrected by judicial intervention.

This request for judicial relief under 5 U.S.C. §706(2)(A) is further supported by this Court in *Anna Jacques Hospital, et al. v. Leavitt,* U.S. District Court for the District of Columbia, Civil Action No. 05-0625 (GK) (Feb. 26, 2008), <u>Medicare and Medicaid Guide</u>, (CCH) ¶302,335 (cited earlier).  Despite a finding that the Secretary had exceeded his statutory authority, the Court went on to decide if the Secretary's actions [ignoring the clear language of 42 U.S.C. §1395ww(d)(3)(E)(i)] were also arbitrary and capricious "in the interest of judicial economy."  CCH ¶302,335, at page 9. The Court found in favor of the plaintiffs on this argument as well, finding that the Secretary improperly considered two factors that Congress did not intend him to consider.  First, the Secretary excluded wage data of hospitals that had converted to critical access hospitals in the wage index calculation because he considered that data to be significantly different from other short-term  hospitals, and second, he based his decision that removing the critical access hospitals would have a minimum redistribution effect on the Medicare payments to the

remaining hospitals.  This resulted in the Secretary failing to "fulfill the statutory purpose of the wage index: to accurately 'reflect[] the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.' 42 U.S.C. §1395ww(d)(3)(E)(i)."  CCH ¶302,335, at page 10.

This is the exact situation that is, again, before this Court.  By excluding the data from the reclassified hospitals in the urban wage index calculation for FFYs 2001 and 2000, the Secretary has certainly failed to fulfill the statutory purpose mandated by the wage index which is to accurately reflect "the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level " 42 U.S.C. §1395ww(d)(3)(E)(i).

## IV

## Conclusion

For the above reasons, the Court should grant the Plaintiff Hospitals' Motion for Summary Judgment.

Respectfully Submitted,

/s/ Katherine Karker-Jennings
Katherine Karker-Jennings
Katherine Karker-Jennings, P.A.
Counsel for Plaintiffs
D.C. Bar No. 349290
6030 Daybreak Circle
Suite A-150, Room 239
Clarksville, MD 21029
(410) 531-2622
(410) 531-9449 (fax)
karkerjen@aol.com

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of April, I caused a copy of the foregoing Plaintiffs'

Motion for Summary Judgment and attachments thereto to be filed electronically and that

the documents are available for viewing and downloading from the ECF system.


/s/ Katherine Karker-Jennings
Katherine Karker-Jennings

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| ST. MICHAEL'S MEDICAL CENTER, <u>et al</u>., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil No. 07- 1484 EGS |
| | ) | **ECF** |
| MICHAEL LEAVITT, Secretary of the Department of Health and Human Services | ) | |
| | ) | |
| Defendant | ) | |

*************************************************************************

## [PROPOSED]ORDER

Plaintiffs, twenty-two hospitals for each of the consolidated cases of Civil No. 07-1484 and Civil No. 07-2036, bring this action against Michael O. Leavitt in his official capacity as Secretary of Health and Human Services.  They challenge the methodology used by the Secretary in the calculation of the wage index and Geographic Adjustment Factor for Federal Fiscal Years 2000 and 2001.  This matter is before the Court on Plaintiff's Motion for Summary Judgment and Defendants' Cross Motion for Summary Judgment.  Upon consideration of the Motions and the entire record herein, it is hereby

ORDERED, that the Plaintiffs' Motion for Summary Judgment is granted; and Defendant's Motion for Summary Judgment is denied; it is further

ORDERED that the Secretary's determination of the urban wage index and Geographic Adjustment Factor (GAF) applicable to the Plaintiffs for Federal Fiscal

Years (FFY) 2000 and 2001 is set aside as unlawful because it was in excess of statutory authority and was also arbitrary and capricious; it is further

ORDERED that the Secretary shall recalculate by _____, 2008, if possible, the urban wage index and GAF based on a labor market which includes all urban hospitals located in their respective Metropolitan Statistical Areas during the year from which wage index data was drawn (1996 for FFY 2000 and 1996 for FFY 2001) that specifically includes all urban hospitals that subsequently reclassified following a successful appeal to the Medicare Geographic Classification Review Board; it is further

ORDERED that the Secretary shall pay by _____, 2008, if possible, the Plaintiffs' FFY 2000 and 2001 inpatient and outpatient Medicare reimbursements, including interest, based on a wage index calculation that includes all reclassified hospitals; it is further

ORDERED, that all payments be deposited in Plaintiffs' counsel's Attorney Trust Account for distribution to the Plaintiffs.

Date: _____        _____
                                Emmet G. Sullivan
                                United States District Judge