IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ST. MICHAEL'S MEDICAL CENTER, et al.,

Plaintiffs

v.

MICHAEL LEAVITT, Secretary of the Department of Health and Human Services

Defendant

Civil Action No. 07-1484 (EGS)

**ECF**

---

**PLANTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, twenty-two urban hospitals located in multiple Metropolitan Statistical Areas (MSAs) in New Jersey, New York, and Connecticut (the "Plaintiffs") respectfully submit this Reply Memorandum in Support of Their Motion for Summary Judgment and in Opposition to the Defendant's Motion for Summary Judgment.

## PRELIMINARY STATEMENT

The Plaintiffs are all prospective payment system ("PPS") urban hospitals who have been financially harmed by the fact that the Secretary of the Department of Health and Human Services (the "Secretary") excluded the wages of all hospitals in their respective Metropolitan Statistical Areas ("MSAs") that had reclassified to another MSA ( the "reclassified hospitals") following an appeal to the Medicare Geographic Classification Review Board ("MGCRB") for purposes of calculating the Providers'

Federal Fiscal Years ("FFYs") 2001 and 2000 wage index and Geographic Adjustment Factor ("GAF"). This policy of excluding the reclassified hospitals located in the Plaintiffs' MSAs in the calculation of the Plaintiffs' wage index, is in direct violation of Congress' clearly stated intent under 42 U.S.C. § 1395ww(d)(3)(E)(i). This policy is so flawed that the Secretary corrected the injustice in the year 2002 with no change in the law. Unlike other cases where it is acceptable for the Secretary to clarify a policy, this is a case where the original interpretion of the underlying statute giving rise to the policy was legally incorrect. It took ten years (from 1991 through 2001), but the Secretary finally recognized the error and corrected his policy for FFY 2002 and onward, and not only did not defend the prior policy in the Final Rule giving rise to the change, but made an admission under the Federal Rules of Evidence that the law required the change. The Secretary knew then that you can not clarify a wrong policy, and did not even try. The language of the underlying statute is clear and it did not give two ways to calculate the wage index; it gave one. This Court should enforce the clear reading of the law for FFYs 2001 and 2000 and grant the Plaintiffs' Motion for Summary Judgment.

## ARGUMENTS

### I. None of the Secretary's arguments are not on point as he is ignoring the fact that the underlying statute of 42 U.S.C. § 1395ww(d)(3)(E)(i) has been analyzed by federal courts and found to be clear, unambiguous, and not subject to interpretation.

The Secretary is in the interesting position of defending a policy that he himself has since abandoned, and the sole argument proffered is (i) from 1991 to 2001, he exercised his discretion to exclude the reclassified urban hospitals from the wage data used to calculate the area average wage index for the MSAs from which the hospitals' had been reclassified, and then, (ii) beginning in FFY 2002, he exercised his discretion to

revise his policy to include this data in the MSA where the reclassified hospitals are geographically located in calculating the average wage index. (Def. Mem. at 2, 11, 16, 18). The Secretary's argument fails completely because the underlying statute which governs how the urban wage index is to be calculated is identical in each time period noted above, has been held by two separate courts to be unambiguous and clear on its face, and is not, therefore, subject to interpretation by the Secretary. A close analysis of the statute and the two federal cases that analyzed the language of the statute fully support the Plaintiffs in this action.

The controlling statute in this case is 42 U.S.C. § 1395ww(d)(3)(E)(i) which states:

> …the Secretary shall adjust the proportion (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs, of the DRG prospective payment rates computed under subparagraph (D) for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level. Not later than October 1, 1990, and October 1, 1993 (and at least every 12 months thereafter), the Secretary shall update the factor under the preceding sentence on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of subsection (d) hospitals [PPS hospitals] in the United States.

As noted above, the language in this statute has been painstakingly analyzed by two pivotal federal court decisions and found to be unambiguous, clear on its face, and not subject to interpretation. The Plaintiffs respectfully disagree with the Secretary that the two cases are "beside the point" (Def. Mem. at 19), and instead believe that these two decisions provide a road map for the proper outcome in the two consolidated lawsuits which are presently before this Court. The first case, which analyzes the first sentence of the above-referenced statute, is *Bellevue Hospital Center, et al. v. Leavitt*, 443 F.3d 163

(2d Cir. 2006). In *Bellevue Hospital,* there were two issues before the Court of Appeals. The first issue was the Secretary's use of MSAs as a means to define "geographic area" [which is the issue where the Court analyzed the first sentence of 42 U.S.C. §1395ww(d)(3)(E)(i)], and the second issue was whether the Secretary acted arbitrarily and capriciously by applying the occupational mix adjustment to only ten percent of the wage index. In upholding the lower Court's decision that the Secretary's use of MSAs was a reasonable interpretation of statutory requirements (the first issue) the Court stated:

> In relevant part, the Medicare statute directs defendant [the Secretary] to:
>
> > adjust the proportion, (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs…for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.
>
> 42 U.S.C. §1395ww(d)(3)(E)(i).
>
> CMS's [the Secretary's] task is unambiguous: to calculate a factor that reflects geographic-area wage level differences, and nothing else.

*Id.* at 174.

Thus, the Court's analysis on the first issue in *Bellevue Hospital* is directly on point for this case and applies to the very language the Plaintiffs seek to enforce. The *Bellevue Hospital* holding directs the Secretary to calculate the wage index in a manner that reflects the "geographic-area wage level differences" as determined by the respective MSAs, "and nothing else". *Id.* at 174. However, the Secretary omits any discussion of the first issue and addresses only the second issue and states that the *Bellevue Hospital* decision is not on point because the issue was the collection of "data on the occupational

mix of employees of PPS hospitals" of which the requirements had recently been modified by "uncodified language" (Def. Mem. at 19.) The Secretary then states "The *Bellevue* court read this uncodified language as unambiguously requiring the Secretary to complete the data collection and apply the occupational mix." (Def. Mem. at 19.) While that may be true of the second issue, the Secretary conveniently omits the first issue in *Bellevue Hospital* and its obvious relevancy to this case. The Court of Appeals in *Bellevue Hospital* held that the first sentence of 42 U.S.C. § 1395ww(d)(3)(E)(i) is unambiguous, period.

The second pivotal case upon which the Plaintiffs rely, and which builds on the *Bellevue Hospital* decision in its review of the statutory language of 42 U.S.C. § 1395ww(d)(3)(E)(i), is *Anna Jacques Hospital, et al. v. Leavitt*, 537 F.Supp.2d 24 (D.D.C. 2008), recently decided by this Court. In *Anna Jacques Hospital*, sixty-two Massachusetts hospitals brought an action against the Secretary challenging his new policy of excluding converted critical access hospitals (CAHs) from the wage index calculation starting in FFY 2004. The plaintiffs did not challenge the results for Fiscal Year 2004, but they did challenge the calculation of the Fiscal Year 2005 index. The Court held that the Secretary, by excluding the CAHs from the wage index calculation, did exceed his authority under the clear reading of 42 U.S.C. § 1395ww(d)(3)(E)(i). The Court found that **"Congress Has Spoken Directly to the Question at Issue"** (*Id*. at page 30, emphasis in original) and wrote:

> Thus, the plain language of the statute indicates that Congress required the Secretary to conduct an accurate survey of the wages and wage-related costs of subsection (d) hospitals [PPS hospitals] and to use the resulting data as the "principal component" or "basic principle" in adjusting the area wage index. The statute does not give the Secretary discretion to exclude from the survey an entire

> category of institutions that were subsection (d) hospitals at the time of the survey, nor to choose to exclude those same hospitals when updating the area wage index on the basis of the survey because the Secretary felt those hospitals have "substantially different labor costs in many labor market areas where they exist." 68 Fed. Reg. at 45,397.

*Id.* at page 31.

This holding covers the facts and law of the present case. Here, as in *Anna Jacques Hospital*, the Secretary improperly "excluded from the survey an entire category of institutions that were subsection (d) hospitals at the time of the survey" when he excluded the reclassified hospitals from the MSA where the reclassified hospitals are located in the calculation of the wage index for FFYs 2001 and 2000. The holding in the *Anna Jacques Hospital* case mandates a finding for the Plaintiffs.

This Court further holds in *Anna Jacques Hospital* that "**The Secretary Did Exceed His Authority Under the Statute by Excluding Subsection (d) Hospitals that Later Converted to CAH Status when Calculating the Area Wage Index"** (*Id*. at page 33, emphasis in original) and wrote:

> The Secretary violated Congress' clear command that he conduct an accurate survey of wages at subsection (d) hospitals and then update the area wage index on the basis of the survey. He exceeded his authority by cherry-picking data from hospitals that had been subsection (d) hospitals in the survey year, but had later converted to CAH status after the survey period……
>
> Congress, however, did not provide the Secretary with discretion to remove data from a group of institutions that were subsection (d) hospitals at the time of the survey because the Secretary found this wage data to not be representative of the wage costs of subsection (d) hospitals as a whole. Instead, Congress required a survey of the *actual* wage costs of subsection (d) hospitals so that the survey would accurately "reflect[] the relative hospital wage level in the geographic area of the hospital," 42 U.S.C. § 1395ww(d)(3)(E)(i), when compared to the national average. Congress mandated that

> this survey of all subsection (d) hospitals would then form the basis for updating the area wage index. As the Second Circuit noted in *Bellevue Hosp*., the Secretary's task is "unambiguous: to calculate a factor that reflects geographic-area wage-level differences, and nothing else." 443 F.3d at 174. The Secretary did not do what Congress ordered and instead constructed an area wage index that did not accurately reflect, and in fact distorted, regional wage variations among subsection (d) hospitals. Therefore he exceeded the authority provided to him by Congress. For that reason, the Secretary's actions must be set aside under 5 U.S.C. §706(2)(C).

*Id*. at page 33-34 (emphasis in original).

This language could not be more on point to support the Plaintiffs' position. Indeed, this case[1] is almost a mirror image of the case at bar, only the Plaintiffs' case is even stronger. The reclassified hospitals did not convert to non-PPS hospital status after the survey years but merely, temporarily, were grouped with an adjacent MSA. The fact that the data was used in the reclassified hospitals' new (temporary) MSA is not relevant. The data was required to be used in the calculation of the MSA where the reclassified hospitals are physically located, as it is measuring "geographic-area wage level differences, and nothing else." *Bellevue Hospital* at 174. The statute is crystal clear on this and the *Bellevue Hospital* and *Anna Jacques Hospital* holdings fully support the Plaintiffs' position. The Secretary may not ignore Congress' clear command that he conduct an accurate survey of wages of subsection (d) hospitals and may not exclude reclassified hospitals from the wage index calculation of the MSAs where the reclassified hospitals are physically located when the statute clearly states that the calculation must reflect "the relative hospital wage level in the geographic area of the hospital compared to

---

[1] This Court also held that the Secretary's actions in *Anna Jacques Hospital* were arbitrary and capricious. *Id*. at 34. The present Plaintiffs believe that is the case here as well, but have already addressed this in our earlier filing and will not duplicate our position. (Pl. Mem. at 22-24.)

the national average hospital wage level." 42 U.S.C. § 1395ww(d)(3)(E)(i). As the Secretary exceeded his authority his actions must be set aside under 5 U.S.C. § 706(2)(C).

The Plaintiffs have already briefed the two-step process for reviewing an agency's interpretation of a statute under *Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837 (1984). If Congress "has directly spoken to the precise question at issue," as is the case here, then the Court "must give effect to [its] unambiguously expressed intent" and "that is the end of the matter." *Chevron*, 467 U.S. at 842-43 & n.9. Clearly, the Secretary's action in these consolidated civil actions does not survive the first step of the Chevron inquiry, as the governing statue is clear and unambiguous as determined by *Bellevue Hospital* and *Anna Jacques Hospital*, and the Plaintiffs will be materially harmed if the statute's terms are not enforced for FFYs 2001 and 2000. The fact that the Secretary embraced the Plaintiffs' position, in full, one year later, without ever defending the abandoned policy, serves to defeat the arguments raised by the Secretary (as further outlined in Argument IV) in this litigation and supports a finding for the Plaintiffs.

**II. A history of the Federal Registers demonstrates that, as far back as 1991, the Secretary wanted to grant the hold harmless protection of including the data of reclassified urban hospitals in the wage index calculation for the urban hospitals left behind in the respective MSAs, but felt powerless to do so as he misinterpreted the underlying statute of 42 U.S.C. § 1395ww(d)(3)(E)(i). When the Secretary acknowledged his error for FFY 2002, he made a legal admission that the law required the change all along.**

The Secretary argues that after he "evaluated ten years [1991-2001] of experience" he changed his policy in FFY 2002 for urban hospitals to include the wage data of reclassified hospitals when calculating the wage index for the MSAs where the

reclassified hospitals are located. (Def. Mem. at 24.) This implies that he came to the conclusion that a change was needed after a ten year analysis of the impact of excluding the reclassified hospitals. Nothing could be further from the truth. As far back as 1991 the Secretary has been publicly debating the unfair treatment of urban hospitals and the reclassification process. The preamble of 56 Fed. Reg. 43,195 (August 30, 1991) which implemented changes to the 1992 PPS inpatient hospital rates contains the following comment at page 43,221:

> Comment: Many commenters expressed concern about the reductions in the wage index values for urban areas that lost hospitals as a result of the reclassification of some hospitals from those areas. Some commenters suggested that we apply the same protection to urban areas as section 1886(d)(8)(C)(ii) of the Act affords to rural areas, that is, to prevent a rural area from having its wage index value reduced as a result of geographic reclassifications.

The Secretary declined to apply a "hold harmless" rule for urban areas because "the statute is very specific with respect to the treatment of the wage index values for geographic areas from which and to which hospitals have been reclassified," even though the omission "may have been left out through oversight or inadvertence." *Id.* at 43,221.

The hand-wringing continued the following year when the issue was raised again. 57 Fed. Reg. 39746 (September 1, 1992). The Secretary responded:

> The law is very specific concerning how the wage index values should be calculated as a result of hospital reclassifications. Congress clearly contemplated that reclassified hospitals would not be considered part of their original labor market areas for purposes of computing the wage index for those areas. This is evidenced by section 1886(d)(8)(C) of the Act, which provides an exception to this requirement for those rural areas where reclassification of hospitals from those areas would reduce the rural wage index value. Accordingly, we believe the statute is clear that the wage index for each area would be computed exclusive of the data for the hospitals that have been granted reclassification from those areas.

57 Fed. Reg. at 39,765.

This record demonstrates that the Secretary was being advised that, because there is a specific "hold harmless" provision for rural hospitals, Congress would need to create one for urban hospitals. Everyone was focusing on the wrong section of the statute. While everyone was focusing on 42 U.S.C. § 1395ww(d)(8)(C), the rural hold harmless section, no one was apparently actually analyzing the language of the governing section of 42 U.S.C. § 1395ww(d)(3)(E)(i). In reality, if the decision makers had concentrated on this latter section they would have seen that the statute already mandated that the reclassified hospitals "in the geographic area" of the remaining hospitals are to be counted in the data for the wage index for each respective MSA. If the Secretary had been so advised as far back as 1991, he would have included the data of the reclassified urban hospitals in the urban hospital wage index calculation. No other logical conclusion can be reached because that is precisely what happened in the year 2001 for FFY 2002. After finally getting the correct advice, the Secretary, in the Final Rule at 66 Fed. Reg. 39,828 (August 1, 2001) wrote:

> **III. Changes to the Hospital Wage Index**…..Section 1886(d)(3)(E) of the Act [42 U.S.C. § 1395ww(d)(3)(E)] requires that, as part of the methodology for determining prospective payments to hospitals, the Secretary must adjust the standardized amounts "for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level." (Underlined emphasis added.)

66 Fed. Reg. at 39,858. The Secretary's support for the change in policy of now including the wage data from reclassified urban hospitals in the MSA where the hospital is physically located is the pre-existing law. This is an admission by the Secretary under

the Federal Rules of Evidence that the controlling law requires that the reclassified PPS hospitals must be included in the calculation of the wage index for the MSA where the reclassified hospitals are physically located. [*See*, Fed. R. Evid. 801(d)(2).] The Secretary's authority for this revision is the underlying law itself; it is not based on an evaluation of "ten years of experience" of omitting the data (Def. Mem. at 2, 24), but rather the law itself which **"requires"** the inclusion of the data. These Plaintiffs should not be barred from recovery for FFYs 2001 and 2000 based on the fact that the Secretary did not receive the correct legal advice until sometime in 2001. To the contrary, once the new policy was published, the Secretary made an admission under the Federal Rules of Evidence that the underlying law required the change. 66 Fed. Reg. 39,828 (August 1, 2001).

To put it another way, if the Secretary had not changed his policy in FFY 2002, and these Plaintiffs brought this lawsuit for FFYs 2001 and 2000 what would the outcome have been? The only logical answer based on the history as we know it, is that once the Secretary reviewed the arguments raised by the Plaintiffs, and after he met with his legal team, he would have concurred with the Plaintiffs' position and changed the policy to conform to the law. If the Secretary received the same advice during this lawsuit as he historically received at the end of 2001, we all know that he would have not defended the old policy. His only reason for doing so now is the fact that he does not like what he perceives to be the retroactive effect. (Def. Mem. at 27.) However, the Plaintiffs' lawsuit is not seeking the retroactive application of corrected data after an error was found which was the case in *Methodist Hospital of Sacramento v. Shalala*, 38 F.3d 1225 (D.C. Cir. 1994), or a reprocessing of claims after a change in the law as in

*Clinton Memorial Hospital v. Sullivan*, 783 F. Supp. 1429 (D.D.C. 1992), but is rather seeking enforcement in FFYs 2001 and 2000 of what the law already mandates. The law fully supports the Plaintiffs' position, and in the year 2002 the Secretary fully agreed.

**III. The Secretary misstates the standard and scope of review as the Secretary's actions do not survive the first step of the *Chevron* inquiry.**

The Secretary's multiple assertions that this Court should defer to the Secretary's interpretation of the underlying statute under an arbitrary and capricious test is wholly without merit. (Def. Mem. at 14-15, 18, 25-26.) While the Plaintiffs believe that they would prevail even under that test, (Pl. Mem. at 22-24) we do not have to go that far. Under the two step inquiry under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Court must first determine "whether Congress has directly spoken to the precise question at issue…" and "….If the intent of Congress is clear, that is the end of the matter…" *Id*. at 842. As the court in *Bellevue Hospital Center et al., v. Leavitt*, 443 F.3d 163 (2d Cir. 2006) and this Court in *Anna Jacques Hospital et al., v. Leavitt*, 537 F.Supp.2d 24 (D.D.C. 2008) both held that 42 U.S.C. §1395ww(d)(3)(E)(i) was clear on its face, then "…the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, at 842-43. The Secretary's actions do not survive the first step of the *Chevron* inquiry.

**IV. By law, no deference should be given to the Secretary's position set forth in this litigation as the arguments are nothing more than a convenient litigation position.**

The Secretary's arguments on the merits of his earlier construction of the statute in this case are merely a litigation position which is entitled to no deference. The Supreme Court has stated that "We have never applied the principle of [*Chevron*, *etc*.] to agency litigating positions that are wholly unsupported by regulations, rulings, or

administrative practice. To the contrary, we have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question…..Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate…." *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 212 (1988), *cited with approval* by this Court in *Foothill Hospital v. Leavitt*, U.S. District Court for the District of Columbia, Civil Action No. 07-701 (ESH), (May 30, 2008), <u>Medicare and Medicaid Guide</u>. (CCH) ¶302,432, at page 6.

That is precisely the situation here. The Secretary did not defend his earlier position in the Final Rule (or Proposed Rule) giving rise to the change. In the Final Rule the Secretary, when introducing the topic for the new policy, writes "Currently, the wage index value for an urban area is calculated exclusive of the wage data for hospitals that have been reclassified to another area." The Secretary then goes on at length on how that policy was wrong as it resulted in a "negative impact" to the hospitals left behind and created "large wage disparities between the reclassified hospitals and other hospitals in the MSA." The Secretary then praises the new policy by observing that the new policy "improves consistency and predictability in hospital reclassification and wage indexes" and "alleviates the fluctuations in the wage indexes due to reclassification" and serves to "promote consistency" within the wage index calculation. 66 Fed. Reg. at 39865. The Secretary not only never defends the previous policy but rather announces all of its shortcomings while praising the new policy.

Added to this is the fact that the Secretary made a legal admission under the Federal Rules of Evidence that 42 U.S.C. § 1395ww(d)(3)(E) "**requires"** the inclusion of

the wage data of the reclassified urban hospitals to be used in the calculation of the wage index for the MSA where the reclassified hospitals are physically located. 66 Fed. Reg. 39,828 (August 1, 2001) at 39,858. As this was the only authority cited by the Secretary in the Final Rule, and there was no defense of the prior policy (only condemnation), then under *Bowen v. Georgetown University Hospital*, all of the arguments made in the Secretary's Memorandum of Law are merely "an agency's convenient litigating position" to which no deference is due. *Id.* at 212.

As if all of this was not persuasive enough, the arguments raised in this litigation by the government conflict with statements made by the Secretary in the Final Rule. For example, the Secretary argues that the statute [42 U.S.C. § 1395ww(d)(3)(E)(i)] "permits the Secretary to remove the data from those hospitals that he judges **compete with a different, higher cost area**[2]." (Def. Mem. at 22, emphasis added.) Yet in the Final Rule which gave rise to the new policy of including reclassified urban hospitals in the MSAs where the reclassified urban hospitals are located, the Secretary disagrees with this reasoning and states:

> **We believe that hospitals continue to compete for services with the hospitals that are grouped with them in their respective MSAs.** Therefore, it would be appropriate to continue to calculate the wage index for those areas as if those hospitals had not reclassified to another area. As a result, we intend to implement our policy to hold urban areas harmless to the extent that the wages of the hospitals that are physically located within urban areas will continue to be used in the compilation of the wage index whether or not these hospitals successfully seek reclassification elsewhere.

[2] Of course this also violates the holding by this Court in *Anna Jacques Hospital, et al. v. Leavitt*, 537 F.Supp.2d 24 (D.D.C. 2008), which struck down the Secretary's decision to omit subsection (d) hospitals that the Secretary felt had "substantially different labor costs in many labor market areas where they exist." *Id.* at page 31, quoting 68 Fed. Reg. at 45,397.

66 Fed. Reg. 39,828 (August 1, 2001) at 39866. (Emphasis added.)

Another example is where the Secretary argues that 42 U.S.C. § 1395ww(d)(3)(E) cannot **require** that the reclassified hospitals be included in the MSAs where the reclassified hospitals are geographically located because, if that were true, then Congress would not have had to enact the rural hold harmless provisions at 42 U.S.C. § 1395ww(d)(8)(C), and "[t]he general rule would swallow the statutory exceptions." (Def. Mem. at 18.) This is incorrect substantively for several reasons. First, the protections at 42 U.S.C. § 1395ww(d)(3)(E) are limited to urban hospitals in their respective MSAs. Second, the protections awarded rural hospitals under the hold harmless provisions in 42 U.S.C. § 1395ww(d)(8)(C) are broader than the protection awarded urban hospitals because this section of the statute protects rural areas from reclassifications by including the reclassified hospitals in the wage index calculation or excluding the reclassified hospitals, whichever results in a higher wage index for the remaining rural hospitals.

In addition, the argument conflicts with the very reason given by the Secretary in the Final Rule for the policy change. The Secretary's support for the change in policy was the fact that the governing statute **"requires"** that the wage index calculation reflect "the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level". 66 Fed. Reg. 39,828 (August 1, 2001) at 39,858.

These are clear examples of the fact that the arguments being raised by the government in this litigation amount to a "convenient litigating position" which conflict with the text of the Final Rule which gave rise to the change in policy, and, as such, is owed no deference. *Bowen v. Georgetown University Hospital,* at 212.

## V. The Plaintiffs' Proposed Order is not beyond the Court's Jurisdiction.

The Plaintiffs are aware that, should they prevail on their Motion for Summary Judgment, a remand is the usual remedy. Yet, the Plaintiffs' Proposed Order is very similar to the Order issued by this Court in the case of *Anna Jacques Hospital, et al. v. Leavitt*, 537 F.Supp.2d 24 (D.D.C. 2008), which reads in part:

> ….it is further
>
> **Ordered** that the Secretary's determination of the rural wage index for Massachusetts and the rural wage index floor applicable to the Plaintiffs for Fiscal Year 2005 is set aside as unlawful because it was in excess of statutory authority and was also arbitrary and capricious; it is further
>
> **Ordered** that the Secretary shall recalculate by **June 1, 2008,** if possible, the rural wage index for Massachusetts and the rural wage index floor applicable to the Plaintiffs based on the 2001 wage survey of subsection (d) hospitals, including the wage data of Nantucket Cottage Hospital; it is further
>
> **Ordered** that the Secretary shall pay by **September 1, 2008,** if possible, the Plaintiff's Fiscal Year 2005 inpatient and outpatient Medicare reimbursement based on a rural wage index floor that is calculated based on the 2001 wage survey of subsection (d) hospitals, including the wage data of Nantucket Cottage Hospital….

As this case is a mirror image of the case at bar, and the complexities are so similar (new calculations and new payments), the Plaintiffs decided to utilize the format of the well reasoned Order of *Anna Jacques Hospital*.

**CONCLUSION**

For the above reasons, the Court should grant the Plaintiff Hospitals' Motion for Summary Judgment and Deny the Defendant's Motion for Summary Judgment.

Respectfully Submitted,

/s/ Katherine Karker-Jennings
Katherine Karker-Jennings
Katherine Karker-Jennings, P.A.
Counsel for Plaintiffs
D.C. Bar No. 349290
6030 Daybreak Circle
Suite A-150, Room 239
Clarksville, MD 21029
(410) 531-2622
(410) 531-9449 (fax)
karkerjen@aol.com

**CERTIFICATE OF SERVICE**

I certify that on this 14th day of July, I caused a copy of the foregoing Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment to be filed electronically and that the document is available for viewing and downloading from the ECF system.

/s/ Katherine Karker-Jennings
Katherine Karker-Jennings