UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ST. MICHAEL'S MEDICAL CENTER, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:07-cv-1484 (EGS) |
| MICHAEL O. LEAVITT, Secretary, U.S. Department of Health and Human Services, | ) ) ) ) ) | ECF |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY BRIEF
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Medicare Act requires the Secretary to reimburse certain inpatient hospitals, like Plaintiffs, using a factor "reflecting the relative hospital wage level in the geographic area of the hospital." 42 U.S.C. § 1395ww(d)(3)(E)(i). This factor is known as the wage index. From 1991 until 2000, the Secretary took the view that if a hospital reclassifies into a different geographic area because it is adjudged to compete with hospitals in that area, then its wage data should not be used to calculate reimbursements for the other hospitals in its original area. In 2001, the Secretary changed his policy to include wage data from a reclassified hospital as part of the wage index in its original area because he concluded that a reclassified hospital would continue to compete with hospitals in its original area as well as the higher cost hospitals in the new area. Both policies were within the Secretary's discretion because the Medicare Act is silent on this point.

In response to the Secretary's motion for summary judgment, Plaintiffs continue to argue that the plain language of the statute also required the Secretary to include data from reclassified hospitals in their original areas before 2001, ignoring the sections of the statute which suggest otherwise. Plaintiffs also claim to have discovered an "admission" by the Secretary that the statute required the Secretary to include data from reclassified hospitals in the calculation of the wage index before 2001. Neither argument has merit since they both consist of repeating the statutory text and insisting that the statute requires inclusion of the data without any further analysis. Yet, no matter how many times Plaintiffs repeat the statutory text, they cannot avoid the fact that the statute is ambiguous with respect to the question of what data must be included in the wage index. Congress itself clearly recognized that the wage index could be calculated in multiple ways because it enacted several provisions that contemplate that data from reclassified hospitals would not be used in those hospitals' original geographic areas. If the statute really said what Plaintiffs claim it does, then those sections would be superfluous. Since the statute establishing the wage index is susceptible to multiple interpretations, the Secretary had discretion to use the reclassified hospitals' wage data in their new areas, and to exclude it from their original areas, and later to revise this policy to include the wage data in both areas. Each policy was entirely proper and consistent with the statute, despite Plaintiffs' protestations to the contrary.

**ARGUMENT**

I.    THE WAGE INDEX STATUTE PERMITTED THE SECRETARY TO EXCLUDE WAGE DATA FROM RECLASSIFIED HOSPITALS

The Secretary's policy from fiscal year ("FY") 1992 through FY 2001 was a permissible reading of the statute and should not be disturbed by this Court.  The basic and recurring flaw in all of Plaintiffs' arguments is their failure to recognize that the statute simply does not speak to, let alone dictate, how the Secretary should treat data from reclassified urban hospitals.  Certainly, Congress did not prescribe in section 1395ww(d)(3)(E)(i) how the Secretary should treat wage data from urban hospitals that have been reclassified to a different area when calculating the wage index for their original area.  Rather, that provision grants the Secretary broad authority to adjust labor related costs for "area differences in hospital wage levels" by a "factor," to be "established by the Secretary," that "reflect[s]" the "relative hospital wage level in the geographic area of the hospital" compared to the national average hospital wage level.  42 U.S.C. § 1395ww(d)(3)(E)(i).  Nowhere does the statute mandate that the "relative hospital wage level" must be the average of the wage costs of every hospital physically located in the geographic area, as Plaintiffs assert.  *See Anna Jacques Hosp., et al. v. Leavitt*, 537 F. Supp. 2d 24, 31 (D.D.C. 2008), *recon. denied*, No. 05-cv-625 (D.D.C. July 15, 2008) (the wage index need not "slavishly adhere" to the results of the wage survey); *Centra Health Inc. v. Shalala*, 102 F. Supp. 2d 654, 660 (W.D. Va. 2000) (Secretary required to exclude data from state institution that skewed wage index).

Instead, the process for calculating a wage index must be informed by the Medicare Act's recognition that some hospitals simply do not belong in the same area as their neighbors because those hospitals compete with higher wage hospitals located elsewhere.  *See* 42 U.S.C.

§ 1395ww(d)(10)(D) (setting forth criteria for geographic reclassification); *R.W. Johnson Univ. Hosp. v. Thompson*, 297 F.3d 273, 285 (3d Cir. 2002) (purpose of reclassification is to provide comparable reimbursement to hospitals that compete for the same labor pool due to their geographic proximity). Depending on their individual circumstances, the Medicare Act specifies differing treatment for the wage data of hospitals that successfully apply for reclassification. For example, the Act provides that wage data from hospitals reclassifying into an urban area will be excluded from the calculation of the urban area's wage index if the data lowers the urban area's wage index by more than 1%. *See* 42 U.S.C. § 1395ww(d)(8)(C)(i)(I) . By contrast, the Act also provides that rural areas will be held harmless from reclassification by specifying that wage data from hospitals reclassifying out of a rural area must be included in the rural area's wage index if excluding the data would lower the wage index, but excluded if including the data would lower the wage index. *Id.* § 1395ww(d)(8)(C)(ii). Congress need not have enacted either of these provisions if wage data from reclassified hospitals could not be excluded under 42 U.S.C. § 1395ww(d)(3)(E)(i). From FY 1992, when the Secretary first implemented the reclassification provisions, until FY 2001, the Secretary calculated urban wage indexes without including wage data from hospitals that had reclassified to other areas, but used that data in the new areas to the extent permitted by the Act. As discussed in the Secretary's main brief, *see* Def. Mem. at 15-17, the Secretary's policy was within the authority granted by subsection 1395ww(d)(3)(E)(i) when it is read in conjunction with subsections 1395ww(d)(8)(C)(i) and (ii).

   Yet Plaintiffs insist that Congress unambiguously required the inclusion of wage data from reclassified hospitals in section 1395ww(d)(3)(E)(i) itself, and thus, that the Court need not consider the reclassification provisions. Plaintiffs rely on a supposed "admission" by the

Secretary in his August 2001 rulemaking notice which consists of nothing more than a quotation of the statutory text.[1]  Pl. Rep. Br. at 10.  As discussed below in Part II, admitting to the wording of the statute is hardly an admission that the statute requires any particular treatment of wage data from reclassified hospitals.  Indeed, the courts that have considered section 1395ww(d)(3)(E)(i) have ruled that it is ambiguous, and that the Secretary has discretion in deciding how to implement the wage index.  *See Bellevue Hosp. Ctr. v. Leavitt*, 443 F.3d 163, 175 (2d Cir. 2006) (the Secretary has considerable discretion in balancing statutory considerations when defining the term "geographic area"); *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1229 (D.C. Cir. 1994) (Secretary to receive "heightened deference" in implementing the wage index).

Second, it is well established that a statute must be considered as a whole when determining whether Congress has already spoken to the question at issue.  As the Supreme Court has held, "[t]he meaning – or ambiguity – of certain words or phrases may only become evident when placed in context.  *Food & Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000).  Thus, the Court should not focus solely on subsection 1395ww(d)(3)(E)(i) to the exclusion of subsections 1395ww(d)(8) and 1395ww(d)(10), as

---

[1]  The August 2001 notice states as follows:

> Section 1886(d)(3)(E) of the Act requires that, as part of the methodology for determining prospective payments to hospitals, the Secretary must adjust the standardized amounts "for area differences in wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level."

66 Fed. Reg. 39858 (1991) (quotation marks in original).  *See* Pl. Rep. Br. at 10 (quoting same excerpt).

Plaintiffs suggest. *See* Pl. Rep. Br. at 10. Subsections 1395ww(d)(8) and 1395ww(d)(10) are later enactments which should be considered because they clarify congressional intent. *See Brown & Williamson*, 529 U.S. at 133 ("Similarly, the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand."). In this instance, these reclassification provisions introduced another set of questions and factors for the Secretary to consider in implementing the wage index. The Secretary acted well within his discretion when he determined that the most accurate method of calculating the wage index was to exclude data from hospitals that were judged not to fit in their geographic area.

This case is distinct from the *Bellevue* and *Anna Jacques* decisions Plaintiffs cite to support their arguments. Pl. Rep. Br. at 7-8. First, neither decision addressed the precise question at issue in this case. Indeed, both *Bellevue* and *Anna Jacques* involved challenges to cost years after the Secretary had changed his policy in 2002. *See Bellevue*, 443 F.3d at 172-73 (challenge to final rule for 2004); *Anna Jacques*, 537 F. Supp. 2d at 28 (challenge to FY 2005 calculation). Ironically, *Bellevue* involved a group of New York City hospitals that were challenging the addition of wage data from New Jersey hospitals when the New York City geographic area was enlarged to include them. 443 F.3d at 167. In any event, the *Bellevue* court, as discussed above, held that the "geographic area" term of the statute was ambiguous, and deferred to the Secretary's use of Metropolitan Statistical Areas to define geographic areas for purposes of the wage index. *Id.* at 178. The court did state that the Secretary's "task" was unambiguous: "to calculate a factor that reflects geographic-area wage level differences, and nothing else." *Id.* at 174. Yet, in no way did the Secretary shirk this "task" when he concluded

that the most appropriate way to deal with reclassified hospitals' data was to exclude that data from the calculation of the wage index for those hospitals' original areas. In other words, the Secretary could carry out his "sole charge" of calculating the "most accurate[] measure [of] geographic-area differences in wage levels," *id.*, by excluding wage data from reclassified hospitals that have been recognized as having wages that track a different area. *See R.W. Johnson Univ. Hosp.*, 297 F.3d at 285 ("the purpose of reclassification is to provide comparable reimbursement to hospitals that compete for the same labor pool due to their geographic proximity"). *See also Athens Community Hosp. v. Shalala*, 21 F.3d 1176, 1180 (D.C. Cir. 1994) (the Secretary's reclassification regulations must serve the Congressional purpose of determining whether a hospital competes in a different area for labor).

      The *Anna Jacques* decision also does not help Plaintiffs. In that case, the court did not hold that the wage index sentence of the statute was unambiguous. Instead, it read it in conjunction with the sentence immediately following it which requires an annual survey, and concluded that the statute unambiguously required a survey of hospital wage data from all hospitals even if those hospitals subsequently changed provider type. 537 F. Supp. 2d at 31. The court concluded that Congress removed some of the Secretary's discretion regarding how to calculate the wage index in 1987 when it enacted the survey provision. *Id.* at 32-33. However, just as the survey provision enacted in 1987 informs the *Anna Jacques* court's reading of the wage index provision, so must the geographic reclassification provisions enacted in 1987 and 1989. Congress enacted the wage index provision in 1983, and added the survey provision and the first reclassification provisions in 1987. Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, § 4005, *codified as* 42 U.S.C. § 1395ww(d)(8)(B)(i). In 1989, Congress further

amended the reclassification provisions to provide a "hold harmless" provision for rural, but not urban, geographic areas, when rural hospitals were reclassified as urban, and for urban areas with incoming reclassified hospitals. Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 6003(h), *codified as* 42 U.S.C. § 1395ww(d)(8)(C)(i)&(ii). The Secretary was within his discretion to read those enactments, and Congress's failure to enact an overall hold-harmless provision, to support the exclusion of reclassified hospitals' wage data from the wage index for their original areas.[2] In so doing, the Secretary did not violate the survey requirement at issue in *Anna Jacques* because the wage data was included in the wage index for the reclassified hospitals' new areas, as well as the national average wage used to measure each area's relative wage level. The Court should therefore defer to the Secretary's policies from both before and after 2001 because they were both within the scope of an ambiguous statute.

II.     THE SECRETARY DID NOT ADMIT HIS EARLIER POLICY WAS ILLEGAL
        WHEN HE CHANGED IT

In 2001, the Secretary proposed to change his policy to include wage data from reclassified hospitals in urban wage indexes for their original areas. This policy change was within his discretion, and based on ten years of experience implementing the wage index. *See* Def. Mem. at 24.

---

[2] The exact treatment of reclassified hospitals' data depended on the impact that the data had on the wage index of the hospitals' new area. If including reclassified hospitals' data decreased the new area's wage index, the agency would calculate separate wage indexes for the reclassified hospitals and for the hospitals located in the new area. If including the reclassified hospitals' data increased the new area's wage index, the reclassified hospitals and the hospitals located in the new area both received a wage index calculated based on all of their data. *See* 65 Fed. Reg. 47054, 47,077 (2000).

Plaintiffs argue that the Secretary really changed his policy due to a belated realization that the statute dictated an opposite result. Pl. Rep. Br. at 9-10. But Plaintiffs' argument is based on the Secretary's August 2001 rulemaking notice which completely contradicts it. The August 2001 rulemaking notice does not include an admission that the statute compelled the change in policy, but merely recites the terms of the statute. 66 Fed. Reg. at 39858. In August 2001, the Secretary still considered the statute as giving him discretion to exclude wage data from reclassified hospitals from the wage index of their original areas, but chose to exercise that discretion to include the wage data instead. *See, e.g.*, *id.* (referring to "broad discretion conferred under the Act" to define hospital labor market areas); 66 Fed. Reg. 39866 (comparing rural "hold harmless" provision as "dictated by section 1886(d)(8)(C)(iii) of the Act [42 U.S.C. § 1395ww(d)(8)(C)(iii)]" with policy reasons given for less protective urban hold harmless policy). The rulemaking notice explained why the Secretary changed policies simply because an administrative agency must give its reasoning for a policy change. *See, e.g.*, *Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade*, 412 U.S. 800, 808 (1973) (plurality opinion); *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 42 (1983). It was only natural that the Secretary did not defend the earlier policy when setting forth his reasons for departing from it. If he did not consider the new policy to be appropriate, he would not have adopted it. But adopting a new policy is a far cry from thinking, much less admitting, that the old policy was unlawful.

The 2001 rulemaking notice also does not support Plaintiffs' argument that the Secretary is putting forth post-hoc rationalizations in this litigation to defend the earlier policy. The 2001 rulemaking notice is itself "post hoc" as to the earlier policy. Instead, the proper place to look

9

for the reasoning behind the earlier policy is the earlier rulemaking notices from 1991 and 1992 through 2000 because these were the rules in effect for the cost years at issue in this case. As discussed in the Secretary's main brief, at the time the Secretary promulgated the policy under review here, the Secretary took the view that excluding wage data from reclassified hospitals in their original areas was appropriate. Def. Mem. at 8-10.[3] But that does not mean, as Plaintiffs suggest, *see* Pl. Rep. Br. at 8-9, that the Secretary mistakenly thought he lacked statutory authority to adopt another policy. To the contrary, the Secretary expressly stated that he could have promulgated an urban "hold harmless" policy via rulemaking, which he later did. *See* 56 Fed. Reg. 43,196, 43,221 (1991) ("This change would need to be adopted through rulemaking. . . ."). Thus, Plaintiffs' theories regarding the Secretary's views as to his authority to adopt an urban hold harmless policy are irrelevant. *See* Pl. Rep. Br. at 10-11. Instead, the rulemaking notices reflect why the Secretary did not adopt such a policy until 2001. The Secretary was reluctant to use his rulemaking powers to supplant Congress's recently enacted statutory hold harmless provisions in 1991. 56 Fed. Reg. 43,221. In 2001, after evidence revealed that the earlier policy was producing undesirable results, 66 Fed. Reg. 22678 (2001), and a MedPac study had recommended the inclusion of data from urban hospitals in the wage index for their original areas, *id.*, the Secretary decided to adopt such a policy, using his "broad discretion." 66 Fed. Reg. at 39858. In other words, agency policy evolved the way it was supposed to, as the Supreme Court recognized in *Chevron*. *See Chevron v. Natural Resources*

---

[3] These rulemaking notices all summarized comments made by the public opposing the Secretary's policy. These comments were included as required by the Administrative Procedure Act, and do not show that the Secretary really wanted to include the wage data all along, Pl. Rep. Br. at 8, or any "handwringing" on the part of the Secretary about the policy, Pl. Rep. Br. at 9.

*Defense Council*, 467 US 837, 863-64 (1984) ("On the contrary, the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis."). Therefore, the Court should defer to the Secretary's policy as set forth in the 1991-2000 rulemaking notices and grant summary judgment for the Secretary.

III.     PLAINTIFFS' PROPOSED ORDER IS BEYOND THE COURT'S AUTHORITY

Since this Court is sitting essentially as an appellate court, should the Court rule for the Plaintiffs, the proper remedy is a remand to the Secretary for further proceedings in accordance with the Court's opinion. *See* Def. Mem. at 28. Plaintiffs concede that the "usual" remedy is a remand to the Secretary, Pl. Rep. Br. at 16, and have not demonstrated why this case is so "unusual" that a different remedy would be appropriate.[4] Thus, in the event the Court rules for the Plaintiffs, it should simply remand the case to the Secretary for further proceedings.

---

[4] Plaintiffs cite to the order entered by the district court in *Anna Jacques* which requires the Secretary to recalculate the wage index and make payment to the plaintiffs Pl. Rep. Br. at 16. As mentioned in his opening brief, *see* Def. Mem. at 20, the Secretary respectfully disagrees with many aspects of the court's decision in that case (including its remedial order), and is currently considering whether to appeal.

## CONCLUSION

For the foregoing reasons, and those set forth in the Secretary's opening brief, the Court should deny Plaintiffs' motion for summary judgment and grant the Secretary's motion for summary judgment.

Dated: August 18, 2008                    Respectfully submitted,


   /s/
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610


   /s/
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 307-0372


   /s/
JOCELYN S. BEER
Attorney
U.S. Department of Health & Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
330 Independence Avenue S.W.
Room 5309
Washington, D.C. 20201
(202) 205-3564

OF COUNSEL:

THOMAS R. BARKER
Acting General Counsel

JANICE L. HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General Counsel
for Litigation

United States Department of Health
    and Human Services